STATE BANK OF LEHR, a corporation, Respondent, v. EDWARD SUKUT, Appellant.

(187 N. W. 960.)

**Bills and notes — plaintiff holder held to have the burden of showing good faith.**

1. In an action by plaintiff to recover on a promissory note, given for a tractor, wherein it claims that it purchased the note in the ordinary course of business before maturity for value and without notice, there

is evidence of defendant's dissatisfaction with the tractor, prior to the time of the purchase of the note, which dissatisfaction was manifested in the presence of the President of the plaintiff bank, who negotiated the purchase of the note.

**Bills and notes — evidence held to present a jury question whether plaintiff was bona fide holder.**

2. It is *held*, that the evidence was of such character that it was for the jury to determine from it, and all the evidence whether the plaintiff acted in good faith in the purchase of the note and whether it purchased it in the manner claimed by it.

Opinion filed March 31, 1922.    Rehearing denied April 29, 1922.

Appeal from the judgment of the District court of Logan county, *Allen,* J.

Reversed and remanded for a new trial.

*Arthur B. Atkins* and *Scott Cameron,* for appellant.

Before the court is entitled to direct a verdict for the plaintiff in an action of this kind the testimony must not only be such as to show consistently the good faith of the purchaser of the note in suit, but it must also be such that no fair-minded person can draw any other inferences therefrom.    Sweet v. Anderson, 41 N. D. 375; Union National Bank v. Moomaw, 184 N. W. 5, Nebr.; 26 R. C. L. p. 1068; 26 R. C. L. p. 1069.

*E. T. Burke,* for respondent.

The holder's right can not be defeated without proof of actual notice of the defect in title or bad faith on his part evidenced by circumstances. Though he may have been negligent in taking the paper, and omitted precautions which a prudent man would have taken, nevertheless, unless he acted mala fide his title, according to settled doctrines will prevail. Valley Savings Bank v. Mercer, 97 Md. 458, 479; Cheever v. Pittsburgh, Chenango & Lake Erie R. R. Co., 150 N. Y. 59, 65; American Exchange National Bank v. New York Belting, etc., Co., 148 N. Y. 705; Knox v. Eden Musee Am. Co., 148 N. Y. 454; Canajoharie National Bank v. Diefendorf, 123 N. Y. 202.

GRACE, C. J.    This is an appeal from a judgment in plaintiff's favor in the sum of $2,325.70.    The action is one to recover upon a certain

$1,750 note. The material facts in the case are as follows: The Lehi Machine & Auto Company was engaged in business in the village of Lehr. It was agent for the Emerson-Brantingham Company, for the sale and distribution of its tractors. In the spring of 1919, the Lehr Machine Company sold to the defendant a certain tractor, plow adjustment, stubble bottoms, extra plow lays, and perhaps some other small items of merchandise, taking his note for the purchase price of them in the sum of $1,750, payable October 1, 1919, without interest. On or about the 25th or 26th day of September, 1919, the plaintiff by its president, one Ziegenhagel, purchased the note. The defendant admits the execution and delivery of the note; he denies that the plaintiff purchased the same in due course of business without notice, or that it is the owner of it. He further in substance alleges that he was induced to purchase the tractor and other personal property and to execute the note by reason of the representations and warranties of the Machine Company, to the effect that the tractor was constructed of first class material; the same was first class workmanship, simple in construction and that it could be successfully operated by the defendant or any other man of ordinary intelligence; that it could be successfully operated by the use of kerosene; that it had generally ample power to pull three breaker plows or four stubble bottoms; that defendant believed and relied upon such representations and warranties; that in truth and fact the tractor was not constructed of first class material, of first class workmanship, but was of inferior material and inferior workmanship, and was so structurally imperfect that it was incapable of doing the work that it was designed to do, and for which it was purchased; that it cannot be made to generate ample power to pull three breakers or four stubble bottoms, or even half that number; that the tractor was of no value whatsoever, and that all of this was known to the Machine Company and its agents at the time of the sale, and that the defendant was induced to sign and deliver the note by such false and fraudulent statements and warranties; that defendant notified the Machine Company, demanded that the tractor be put in order and that in the event it could not be made to work properly and in the manner warranted, it and the other personal property to be taken back by the company and the defendant's note be returned to him; that the machine company represented that the tractor could be made to work, and that the defendant was induced to retain it and continued his efforts to make the same work; that he made complaints to the agents, representatives and officers of the Machine Com-

pany concerning the tractor and that it on several occasions sent experts out in the attempt to make the tractor work, who failed in their attempt; that defendant offered to return the tractor and other personal property. The defendant further alleges and pleads a counterclaim in the sum of $800 for loss of time and money in attempting to make the tractor work.

The case was tried to the court and jury. At the close of all the testimony plaintiff asked the court to direct a verdict in its favor. This motion was denied. The jury failed to agree; the plaintiff renewed the motion for a directed verdict. It was agreed in open court by counsel for the respective parties that the motion for a directed verdict might be argued at a later date, and the jury discharged for the present and that no objection would be made to the fact that the jury was discharged. On the 11th day of October 1921, argument of the motion was had and the court concluded that the motion for a directed verdict made at the close of all of the testimony by the plaintiff should be allowed, this on the theory that the plaintiff had purchased the note in due course of business for a valuable consideration, and without knowledge of any facts that would show that such purchase was made in bad faith.

The directing of the verdict, the order for judgment and judgment against the defendant are assigned as error, as well as that there was evidence showing that plaintiff was not a purchaser in due course; that such evidence was of such a nature that the jury would have been justified in finding that the plaintiff was not a holder in due course, and further that the evidence was of such a nature that it clearly shows there was a breach of warranty and failure of consideration so that the jury would have been justified in finding for the defendant on all the issues. Error is also specified to the effect that the verdict is not justified by the evidence.

It is clear that a verdict should not have been directed if the evidence of the purchase of the note, is of such character that different minds could draw different conclusions as to whether it showed that the note was taken in due course, or with notice or knowledge of matters which might constitute a defense or show the bad faith of the purchaser. We think the evidence is of that character and that it should have been submitted to the jury for consideration and determination.

Ziegenhagel was president of the plaintiff bank. He knew when he purchased the note that it was given for a tractor. The evidence shows that defendant made complaint concerning the tractor to the Machine

Company in the presence of Ziegenhagel, Bellen, the agent of the Machine Company, and three other persons, Britten, Brost and Steffan; and this before the time plaintiff purchased the note; that at the time he made such complaint he was talking loudly and was thoroughly angry  He further stated in answer to questions as follows: Q. And after they came in, what was said? A. And I said here is a piece of broken iron, if they can't fix the engine they can come right away out and bring the engine to town.

Q. And Mr. Ziegenhagel was present, was he, at that time?

A. Yes.

Q. And how were you talking, as to talking in a low quiet voice, or loud and angry?

A. I was quite loud.

Q. You were quite thoroughly mad, were you?

A. I was.

Q. What did anybody say?

A. Oh, they was trying to reduce me a little down and says if that matter can't be fixed that they would take the engine back without any cost to me.

The evidence further discloses that defendant had much trouble with the engine; that experts were out many times to try to fix it.

The undisputed evidence shows the note bore no interest before maturity; it was purchased but a few days prior to the time it matured, we think, that it was a matter of common knowledge that money was very scarce in North Dakota at that time, and whether the bank in the financial conditions then existing would invest money in non-interest bearing negotiable paper, was a circumstance which might be considered by the jury as bearing upon the question of the good faith of the purchaser. It is scarcely necessary to add that since Ziegenhagel was president of the bank, his knowledge was the knowledge of the bank. We are of the opinion that under the rule announced in Sweet v. Anderson 41 N. D. 380, 170 N. W. 869, the burden is on plaintiff to show its good faith. See also Connelly v. Greenfield Savings Bank, 185 N. W. 887. We are satisfied from an examination of the record that the questions of fact in this case should have been submitted to the jury, and that it was reversible error for the court not to so do.

The judgment appealed from is reversed, and the case is remanded for a new trial. Appellant is entitled to his costs and disbursements on appeal.

ROBINSON, BRONSON, CHRISTIANSON, and BIRDZELL, JJ., concur.